IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOEL ANAYA,

        Plaintiff,

  vs.

R. GAMBERG, et al.,

        Defendants.

No. 2:15-CV-1991-JAM-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment (Doc. 19) based on failure to exhaust administrative remedies.

I. BACKGROUND

This action proceeds on plaintiff's original complaint. See Doc. 1. Plaintiff names the following as defendants: (1) R. Gamberg; (2) C. Glen; (3) Hawks; (4) Morris; (5) Cisneros; and (6) Beard. Plaintiff claims that he submitted an "inmate request" on October 14, 2012, seeking protection. According to plaintiff, he believed his life was in danger "because of noticing gang leaders [I am dropping out of the gang, et al.]." Plaintiff next states that defendants

1

Glen, Cisneros, and Gamberg escorted him to the program office on November 15, 2012, "for my own safety." Plaintiff claims that these defendants called him a "snitch" and a "big baby." Plaintiff also claims that defendants Hawks and Morris "threaten to assault" him and threatened to file a report against plaintiff if he didn't leave the office. Plaintiff also claims that, after returning to his cell, defendants Hawks, Morris, and Cisneros punched him in the face and head for no reason. Plaintiff also alleges that these defendants kicked him over 15 times while he was on the ground. According to plaintiff, defendants Gamberg and Glen ordered defendants Hawks, Morris, and Cisneros to cover up the assault by filing a false rules violation report against plaintiff. Plaintiff states that, after this, he was placed in administrative segregation.

The complaint contains no allegations specific to defendant Beard, who is alleged to be the Secretary of the California Department of Corrections and Rehabilitation.

The complaint was found to be appropriate for service on defendants Gamberg, Glen, Hawks, Morris, and Cisneros. See Doc. 12 (September 18, 2017, order). The court determined that the complaint failed to state a claim as against defendant Beard. See id.

## II. THE PARTIES' EVIDENCE

A.  Defendants' Evidence

Defendants' statement of undisputed facts is supported by the declarations of V. Lomeli, the Appeals Coordinator at Salinas Valley State Prison, M. Chappuis, the Appeals Coordinator at High Desert State Prison, and D. Foston, the Appeals Coordinator for the Office of Appeals for the California Department of Corrections and Rehabilitation. See Docs. 19-4, 19-5, and 19-6. According to defendants, the following facts are undisputed:

1. Plaintiff submitted an inmate appeal as log no. HDSP-C-13-00819. See Chappuis declaration, ¶ 16. The grievance was written by plaintiff on January 31, 2013, but not received in the inmate appeals office until March 15, 2013. See id.

2. The appeal was denied at the first level on April 25, 2013, with a finding that staff did not violate policy. See id.

|   |   |   |
|---|---|---|
| 1 |  | 3. Plaintiff's inmate appeal was rejected at the second level as untimely. <u>See</u> <u>id.</u> Plaintiff responded to the rejection and his appeal was accepted at the second level and denied on September 18, 2013, with a finding that staff did not violate policy. <u>See</u> Docs. 19-4, 19-5, and 19-6. |
| 2 |  |
| 3 |  |
| 4 |  | 4. No appeals by plaintiff have been accepted at the third level. <u>See</u> Foston declaration, ¶ 12. Four appeals, including HDSP-C-13-00819, were denied or rejected for procedural reasons. <u>See</u> <u>id.</u> |
| 5 |  |

B. <u>Plaintiff's Evidence</u>

In opposition to defendants' motion, plaintiff submits his own declaration under penalty of perjury. <u>See</u> Doc. 23, pp. 1-5. Plaintiff does not reference any attached exhibits or other evidence of record in his declaration which does not contradict any of defendants' evidence. Also included with plaintiff's opposition as "Appendix-A" is an inmate grievance signed by plaintiff on October 15, 2012, and assigned log no. HDSP-12-03563. <u>See</u> id. at p. 17. This grievance, in which plaintiff complained of his placement in administrative segregation following a rules violation, was rejected at the first level. <u>See</u> <u>id.</u> Plaintiff also attaches as "Appendix-B" what appears to be a February 5, 2014, print-out of his mailroom activity over the period from December 2012 through January 2014. <u>See</u> <u>id.</u> at pp. 19-20.

### III. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics,</u> 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.

/ / /

/ / /

3

See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

/ / /

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISCUSSION

The Prison Litigation Reform Act (PLRA) requires prisoners seeking relief under § 1983 to exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must

follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. Defendant bears burden of showing non-exhaustion in the first instance. See Albino v. Baca, 697 F.3d 1023 (9th Cir. 2012).

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow

proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a). Group appeals are permitted on the proper form with each inmate clearly identified, and signed by each member of the group. See Cal. Code Regs. tit 15, § 3084.2(h).

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

Defendants argue:

> Anaya wrote appeal HDSP-13-00819 on January 31, 2013, which concerns the Defendants and events alleged in this action. (See DUF 13). The High Desert State Prison (HDSP) appeals office did not receive the appeal until March 15, 2013. (DUF 13). Anaya received a first and second level response both determining that staff did not violate policy. (DUF 13). The second level response was issued on September 18, 2013 (DUF 13), and Anaya had thirty days to file a response to the appeal (Foston Decl. ¶ 5; Chappuis Decl. ¶ 6; Lomeli Decl. ¶ 6). The appeals office may cancel an appeal if the time limits for submitting the appeal are exceeded. Cal. Code Regs. tit. 15, § 3084.6(c)(4). Anaya submitted the appeal within the prescribed time limits, but his appeal was rejected on October 22, 2013, because the appeal was missing the necessary supporting documentation. (See Compl. 15; see also Foston Decl. ¶ 14). Anaya again had thirty days from the date of the appeal rejection to return the appeal with the required documentation requested (Foston Decl. ¶ 14), but the appeals office did not receive Anaya's response to the rejected appeal until December 19, 2013 (see Compl. 21; Foston Decl. ¶ 15), which was more

7

than thirty days past the issuance of the rejected appeal. Accordingly, Anaya's appeal was cancelled on January 13, 2014. (See Compl. 21; Foston Decl. ¶ 15).

It does appear that Anaya attempted to appeal the cancellation of HDSP-13-00819, but that he failed to meet time constraints. (See Compl. 27-28; Foston Decl. ¶ 16-17). Anaya claims he received the appeal response cancelling the HDSP-13-00819 appeal on January 27, 2014. (Compl. 21). But instead of appealing directly to the third level as prompted by regulation, Cal. Code Regs. tit. 15 § 3084.6(e), which is included in all of the appeal responses from the third level (Compl. 15, 21, 26-28), Anaya appealed the cancellation of HDSP-13-00819 to Salinas Valley State Prison (SVSP) (Lomeli Decl. ¶ 16), and then to HDSP (Chappuis Decl. ¶ 18) before sending to the third level. The third level received the appeal regarding the cancelled appeal on March 6, 2014 (Compl. 28). By the time the appeal reached the third level the time constraints were exceeded, and the appeal was cancelled. (Compl. 28). Anaya had the opportunity to present his appeal directly to the third level, but Anaya failed to follow the regulations that were provided to him in the previous rejection and cancellation letters from the third level. (See Compl. 15, 21, 26).

Since cancelled appeals do not exhaust administrative remedies and Anaya's untimely attempt to challenge the cancelled appeal failed, his claim is barred. Anaya filed this action before exhausting his available remedies, and thus the Court should grant Defendants' summary judgment motion.

Plaintiff argues that he had no effective grievance remedies available to him because his appeal was classified as a staff complaint.

A review of defendants' evidence reflects that plaintiff failed to submit an appeal to the third level. Plaintiff's argument that he had no remedies available because his grievance was characterized as a staff complaint is unpersuasive. While plaintiff's grievance was in fact deemed a staff complaint, a determination was nonetheless made at both the first and second levels that staff did not violate relevant policies with respect to the issues raised in the grievance. See Doc. 19-5, Exhibit C. Moreover, plaintiff was instructed to appeal through the third and final level of review if he was not satisfied with this result. See id. Thus, unlike some staff complaints where the inmate is never apprised of the result and, for this reason, has no method of challenging the result, plaintiff in this case knew the result of the staff complaints and had further remedies available to him, which he did not pursue.

///

8

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendant Beard be dismissed for failure to state a claim; and

2. The remaining defendants' motion for summary judgment (Doc. 19) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

September 12, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE